## CATHCART vs. WALTER.

1. An entry upon real estate, against the will of a party in possession, is forcible, and the detainer of it afterwards, unlawful.

## ERROR to St. Louis Circuit Court.

LESLIE, for plaintiff in error.

The plaintiff contends that the evidence does not prove any acts committed by him that amount to forcible entry and detainer, even though Cathcart should have entered forcibly and then turned out Walter by force.

The relation of landlord and tenant at no time existed between Cathcart and Walter ; and so Cathcart was not restricted in his right of acting as in the case of landlord and tenant, nor as in other cases where he is by law forbidden to take possession except by lawful process. The property in the house, as well as the leasehold interest, was Cathcart's by purchase from Phigby, and all the terms and conditions of said purchase were known to Walter, and according to the testimony of Graham, Walter's partner, was a *quasi* partner to said contract. The same was made for Walter's benefit, with the express agreement that Cathcart might do exactly what he did do.

This contract, as testified to by Graham and Phigby, was founded upon a valuable consideration in law, to wit: the ownership of the leasehold interest in real estate by agreement from Phigby, and the higher consideration of friendship and kindness, manifested under circumstances rarely to be met with in our intercourse in society.

A very pertinent question arises in this case as to the legal rights of Cathcart under his contract, and that is, can it be enforced according to its terms, and according to the true intent and meaning of the parties ? I contend that it is perfectly competent for one man to sell property to another, upon condition that when paid for it is to be the property of the vendee, and until then, to be and remain the absolute property of the vendor with the right reserved to take the same upon any conditions of a legal character coupled with the contract. The assertion of a right so reserved is no trespass, no forcible entry, no taking of the law into one's own hands, nothing that is *contra bonas mores*. It is no more a forcible entry than if Walters had voluntarily surrendered the possession of the premises;—it was but the assertion of a right absolutely contracted for by contract.

The first instruction asked and refused on the part of the defendant below, was intended to present the legal proposition, that the defendant having gotten peaceable possession, by virtue of his contract, had a right to keep the possession ; and said instruction was based upon the whole case as it was in evidence before the jury, and was not designed to contradict the express words in the 2d section of the statute. See Rev. Code, 512.

The second instruction refused to defendant below, is sound law, pertinent to the issue, and the refusal to give it was error. The first part of said instruction distinguishes forcible entry and detainer from unlawful detainer. The acts which give the two remedies are entirely dissimilar. The recovery for forcible entry and detainer is no bar to unlawful detainer. The allegations and proof do not agree. To allege one and prove the other, is against the sound policy of the law; the benefits of *res adjudicata* is lost to the party by this ruling of the court. The remainder of said instruction goes to the legal and binding effect of the assignments.

The refusal to give the 5, 6 and 7th instructions of the case stated, is error.

The damages are excessive. It will be found by the record, that the jury found about eight

months rent at $100 per month, and then doubled it, and then the court doubled it again. The excess is $1700, and is manifest from the record that the court below erred in not grant. ing a new trial.

All the instructions asked by Walter and given by the court, were calculated to deceive the jury.

The instruction given at the voluntary instance of the court, is illegal and without point.

The facts as to whether Walter had fulfilled his contract, was by the instructions taken away from the jury.

CROCKETT, for defendant in error.

The case shows that here was entry, accompanied by such "words as had a natural tendency to excite fear and apprehension of danger;" and that the defendant in error was thus turned out of possession. It is precisely within the statute respecting "Forcible entry and detainer." ◊ 2, R. S. 1845.

The instructions of the circuit court were in accordance with the statute. This court had already stated the object of the statute as follows : "The object of the statute is not to permit the possession to be charged against the will of the party who has it, without the intervention of legal proceedings, and thus far its general spirit is conformable to the original design of the old British statute of 5 Rich. 2, Ch. 7." Warren vs. Ritten, 11 Mo. R. 354.

The questions of the case were fully covered by the instructions actually given, and the case was well tried in all substantial points. The instructions insisted upon here by appellant, so far as they rightly apply to the case, had already been given in substance by the court. Maston vs. Fanning, 9 Mo. Rep. 303; Atchison vs. Franklin, decided this term.

BIRCH J., delivered the opinion of the court.

It appears from the bill of exceptions in this case, that on the 8th of February, 1847, the plaintiff in error, "in order to befriend" the plaintiff in the suit below, and his then partner Graham, negotiated with one Phigby for the purchase of his stock of liquors, fixtures, furniture, &c., in a dram shop establishment called the "Missouri Exchange," located in this city. Five hundred dollars of the purchase money was advanced and paid down by the plaintiff, Walters and his partner Graham, and the defendant, Cathcart, endorsed their two notes, each for the sum of seven hundred and fifty dollars, for the balance of the purchase money.

Phigby held the house in which the dram shop was kept, under a five years lease, from one Philibert, but assigned it also, with the consent of Philibert, to the plaintiff below, by whom, in connection with his partner in the business, it was accordingly taken possession of, with the understanding (according to Graham at least) that the whole establishment should be under the control of Cathcart, until his fifteen hundred dollars endorsements were paid, and also such other liabilities

Cathcart vs. Walter.

or indebtedness of the firm as might accrue to Cathcart, in furnishing them the liquor, &c., to keep up the establishment.

Under these circumstances, and alleging the default of Walters to pay the liabilities thus incurred, (and after the withdrawal of the partner, Graham) Cathcart entered the house during the temporary absence of Walters, ordered out the customers, closed the door, and has since kept Walters from the enjoyment or possession of the property.

There can be no doubt that this was a forcible entry, and that the subsequent detainer was an unlawful one, because both were against the will of Walters, and the general understanding as to the control which Cathcart was to have over the establishment, could at most imply nothing beyond his right to enter into, or obtain control over the house and the business in a legal manner or under a proper legal process. The instructions of the court were therefore correct upon that point, but incorrect, as we conceive, in respect to the measure of *damages* they suggested. The instructions upon that point were to the effect, that if the jury found for the plaintiffs, they would assess such damages as he had sustained by reason of the forcible entry and detainer, and also the rents and profits of the premises up to the time of their verdict, together with the monthly value of the rents. To say nothing further of the fact that Cathcart was bound for the payment of a large sum of money for the plaintiff, and of the understanding by which he supposed he had a right to take possession of the establishment in the manner he did, it appears from the receipts which are embodied in the record, that the plaintiff only continued to *pay* rent for the property for the period of six months and eight days after being dispossessed, at which time it would seem that another person went into possession, and has since regularly paid the rents himself.

Such being the case, resulting most probably from the plaintiff's own neglect to keep his rents paid according to, and whereby he forfeited the lease; or it being at all events certain that he neither paid nor is bound to pay the rents thus paid by another—whether restitution would or would not be due of the premises under the spirit of the law upon which the instruction was predicated, the instruction should at least have been so modified as that the sum of the rents paid by the plaintiff, (or which he was liable for, if any,) with such additional damages as he had sustained in the way of his business, by the entry and detainer complained of, should be the measure for the verdict of the jury, and double that sum (of course) for the judgment of the court.

The judgment of the circuit court is accordingly reversed and the cause remanded.